Tara J. Schleicher, OSB #954021
E-Mail: tara.schleicher@foster.com
FOSTER GARVEY PC
Eleventh Floor
121 SW Morrison Street
Portland, Oregon 97204-3141
Telephone: (503) 228-3939
Facsimile: (503) 226-0259

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| CORVALLIS HOSPITALITY, LLC, an Oregon limited liability company,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>WILMINGTON TRUST, NATIONAL ASSOCIATION, as TRUSTEE FOR THE BENEFIT OF THE HOLDERS OF LCCM 20127-LC26 MORTGAGE TRUST COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2017-LC26; MIDLAND LOAN SERVICES, INC., a Delaware corporation; and BEACON DEFAULT MANAGEMENT, INC., a California corporation,<br><br>　　　　　Defendants. | Case No. 6:22-cv-00024-MC<br><br>**PLAINTIFF'S MOTION TO REMAND**<br><br>**ORAL ARGUMENT REQUESTED** |

## LR 7-1(a) COMPLIANCE

Corvallis Hospitality, LLC's ("Plaintiff" or "Corvallis Hospitality") counsel, Tara Schleicher, conferred with Douglas Pahl, counsel for Wilmington Trust, National Association, as Trustee for the Benefit of the Holders of LCCM 20127-LC26 Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 20217-LC26 ("Wilmington Trust" or "the Trust"), Midland Loan Services, Inc. ("Midland") and Beacon Default Management, Inc. ("Beacon") (collectively, the "Defendants") via telephonic communication regarding the issues presented by this Motion to Remand (the "Motion") but the parties have been unable to agree.

## **MOTION**

Consistent with applicable abstention doctrines, Corvallis Hospitality respectfully requests that this Court abstain from hearing this case to allow the state court to interpret and resolve issues inextricably intertwined with Oregon's House Bill 4204 enacted in response to the COVID-19 pandemic to protect the state's citizens and the public interest.

## **PROCEDURAL HISTORY**

Corvallis Hospitality filed a complaint for violation of Oregon House Bill 4204 ("HB 4204"), violation of the Oregon Trust Deed Act, breach of the covenant of good faith and fair dealing and injunctive relief in Benton County Circuit Court for the state of Oregon (the "State Court") on December 14, 2021 following Defendants' scheduling of a foreclosure sale of Corvallis Hospitality's hotel property (the Hilton Garden Inn at Oregon State University) for December 21, 2021 (ECF #1-1, pp. 1-21).  Along with the Complaint, Corvallis Hospitality filed an Ex Parte Motion for Temporary Restraining Order and Order to Show Cause Why Preliminary Injunction Should Not Enter (the "TRO Motion") (*id.* pp. 22-41).  The TRO Motion was served on Defendants on December 14, 2021 and presented *ex parte* on December 15, 2021 before the Honorable Joan Demarest (*id.*, pp. 105-108).  Judge Demarest entered a Temporary Restraining Order enjoining the scheduled December 21, 2021 foreclosure sale until further notice, restraining Defendants from asserting or pursuing claims against Corvallis Hospitality and setting a hearing for January 13, 2022 for Defendants to show cause, if any there be, why such activity should not continue to be restrained during the pendency of Corvallis Hospitality's action (*id.*, p. 111-114) (the "TRO").

The parties reached an agreement on a briefing schedule, allowing Defendants until December 31, 2021 to file an opposition to the Order to Show Cause and setting Corvallis Hospitality's reply deadline as January 7, 2022. Meanwhile, Defendants re-scheduled the non-judicial foreclosure of Corvallis Hospitality's hotel for January 18, 2022, just beyond the January 13, 2022 expiration date of the State Court TRO.

Defendants did not file any opposition with the State Court on December 31, 2021 to

Corvallis Hospitality's requested Preliminary Injunction.    Therefore, on January 4, 2022, Corvallis Hospitality filed a supplemental declaration, proposed order, and cover letter requesting that the Preliminary Injunction be entered based on lack of objection by Defendants (ECF #1-1, pp. 130-144).    The next day, on January 5, 2022, Defendants filed a Notice of Removal.    On January 24, 2022, Defendants filed their Answer to Complaint, Affirmative Defenses and Counterclaims (ECF #5) (the "Answer") with this Court.    In their Answer, Defendants assert counterclaims for Breach of Contract; Judicial Foreclosure of Deed of Trust; Appointment of Receiver and Taking and Impairment of Contract.    All of the claims and counterclaims are effectively related to Defendants' violations of HB 4204 discussed at length below.[1]

## MEMORANDUM

### I.    Factual Background

#### A.  HB 4204.

On June 30, 2020, in response to the effects of the COVID-19 pandemic, the Governor of the State Oregon signed HB 4204. The purpose of HB 4204 is to protect a borrower, one like Corvallis Hospitality, from certain actions taken by a lender as a result of financial difficulties resulting from the COVID-19 pandemic during the emergency period. The emergency period was initially between March 8, 2020, and September 30, 2020 but was extended by the Governor in Executive Order 20-37 to December 31, 2020 (the "Emergency Period").

During the Emergency Period, under the terms of HB 4204 a lender may not treat as a default a borrower's failure to make a periodic installment payments or to pay any other amount that is due to the lender on or in connection with an obligation that is subject to a financing agreement if at any time during the Emergency Period the borrower notifies the lender that the borrower will not be able to make the periodic installment payments. In lieu of treating the

---

[1] Corvallis Hospitality additionally asserts claims based on Defendants' attempts to charge loan fees not authorized by the applicable loan documents and Defendants' failure to properly account for loan payments.  These additional breaches by Defendants stem from the alleged defaults in 2020, which Defendants are prohibited from pursuing under HB 4204.

failure to pay as a default, the lender <u>shall</u> defer from collecting the periodic payments due during the Emergency Period and permit the borrower to pay the payment at the date on which full performance of the obligation is due.

Section 3(d) of HB 4204 further provides that a lender may not do any of the following if a borrower qualifies for relief under HB 4204:

> (A) Impose or collect charges, fees, penalties, attorney fees or other amounts that, but for the provisions of this section, the lender might have imposed or collected from a borrower for failing, during the emergency period, to make a periodic installment payment or pay another amount due on or in connection with the borrower's obligation;
> (B) Impose a default rate of interest that, but for the provisions of this section, the lender might have imposed or collected from a borrower for failing, during the emergency period, to make a periodic installment payment or pay another amount due on or in connection with the borrower's obligation;
> (C) Treat in any manner the borrower's failure during the emergency period to make a periodic installment payment or pay another amount due on or in connection with the obligation as an ineligibility for a foreclosure avoidance measure;
> (D) Require or charge for an inspection, appraisal or a broker opinion of value, not otherwise permitted in the absence of a default;
> (E) Initiate cash management not already in existence before the effective date of this 2020 special session Act;
> (F) Implement lockbox procedures not already in existence before the effective date of this 2020 special session Act;
> (G) Take control of the operating revenue from real property secured by the financing document unless the control was established before the effective date of this 2020 special session Act; or
> (H) Declare a default based on the failure of a borrower to meet financial covenants due to inadequate operating revenue resulting from the COVID-19 pandemic.

Section 4(a) of HB 4204 further provides that a lender may not foreclose a deed of trust by advertisement and sale any time during the Emergency Period if a borrower qualifies for relief. As set forth in Section 8 of HB 4204, a borrower that suffers an ascertainable loss of money or property because a lender took an action prohibited by Section 3 of HB 4204 may bring an action in a circuit court of the State of Oregon to recover the borrower's actual damages, including the borrower's court costs and attorney fees.

### B. Facts Underlying Claims Asserted.

As previously stated, Corvallis Hospitality is the owner and operator of the Hilton Garden Inn located in Benton County, Corvallis, Oregon on the campus of Oregon State University and

within walking distance to the major sports venues for Oregon State University. The Hilton Garden Inn has historically been financially successful and one of, if not the, primary hotel for visitors to Oregon State University.[2]

Corvallis Hospitality obtained financing from Ladder Capital Finance, LLC ("Ladder") (a private lender – not a federal savings association or national bank under 12 U.S.C. § 1462) for purposes of the Hilton Garden Inn. The financing was documented through a Loan Agreement, dated as of May 3, 2017 (the "Loan Agreement") between Corvallis Hospitality and Ladder. Under the Loan Agreement, Ladder made a loan to Corvallis Hospitality in the original principal sum of $18,000,000.00 (the "Loan"). The Loan is evidenced by a promissory note (the "Note") that Corvallis Hospitality made, executed, and delivered to Ladder in the original principal sum of $18,000,000.00. The Note is secured by, among other things, a Leasehold Deed of Trust, Assignment of Leases and Rents and Security Agreement, dated as of May 3, 2017 (the "Deed of Trust") executed by Corvallis Hospitality as grantor, in favor of Beacon, as trustee, for the benefit of Ladder as beneficiary, which was recorded May 4, 2017 as Instrument No. 2017-557074 in Benton County, Oregon. The Note, the Deed of Trust, and all other documents evidencing or relating to the Loan are referred to herein as the "Loan Documents." Through a series of assignments and allonges, the Trust asserts that it is now the owner and holder of the Note, the beneficiary under the Deed of Trust, and the secured party and assignee under all of the other Loan Documents.

Corvallis Hospitality as the mortgagor and grantor of the real property associated with the Hilton Garden Inn qualifies as a "borrower" under HB 4204. Likewise, the Trust as a beneficiary under the Deed of Trust qualifies as a lender, while Midland as the agent and special servicer and Beacon as the trustee also qualify as lenders under HB 4204.

---

[2] All statements in this section I(B) are set out or supported in the Declaration of Jeff McKee in Support of Ex Parte Motion for Restraining Order and corresponding exhibits entered in the record in this case at ECF 1-1, pp. 42 – 104.

Like virtually every facet of the hospitality industry across the world, Corvallis Hospitality was severely affected economically by the COVID-19 pandemic and other exogenous factors (such as related "stay-at-home" orders and the willingness of individuals to travel in light of public health issues). Due to these impacts, Corvallis Hospitality was unable to make payments to the Trust on the Loan starting in May 2020 when essentially all hotels for the most part had shut down. In response, a representative of Corvallis Hospitality contacted Midland as the special servicer for the Trust to discuss potential workout options and Corvallis Hospitality's inability to make payments. These discussions included the exchange of requested financial records, projections, reports and a pre-negotiation letter Midland required Corvallis Hospitality to sign before engaging in any discussions. Although Corvallis Hospitality attempted to engage in discussions at the onset of the pandemic and the industry shut-down, Midland did not provide the pre-negotiation letter until August 2020.

On August 20, 2020, Wells Fargo representing to be the master servicer for the Trust, and in compliance with Section 9 of HB 4204, provided Corvallis Hospitality with a copy of HB 4204 informing Corvallis Hospitality that it should contact its legal counsel with any questions regarding HB 4204. The Trust did not offer any payment accommodations with this notice.

Subsequently, on October 7, 2020, during the Emergency Period, counsel for the Trust sent Corvallis Hospitality a letter accelerating all amounts due under the Loan based on the failure to make payments between May 2020 and October 2020 (the Emergency Period). The letter asserted that those payments were due plus late charges, default interest, attorney's fees, advances and costs and expenses. The Trust additionally stated that it was reserving the right to appoint a receiver over the Hilton Garden Inn. In response, counsel for Corvallis Hospitality again requested that the Trust review HB 4204 and the limitations imposed on the Trust based on the demand letter sent on October 7, 2020 and additional communications made by the Trust directly to the Hilton Franchise and Oregon State University. This communication was ignored by the Trust and its representatives. As a result, and faced with the October 7, 2020 demand, accelerated Loan and threat of receivership, Corvallis Hospitality was coerced into making

payments to the Trust in October 2020 through December 2020 while continuing attempts to negotiate a forbearance or workout with the Trust.  These efforts included an updated proposal sent to Midland and the Trust on October 26, 2020.

The Trust did not respond to any of Corvallis Hospitality's proposals until December 2, 2020 when Midland on behalf of the Trust rejected the October 26, 2020 proposal and stated in an email to Corvallis Hospitality that "deferral of all payments is not likely" despite the requirements of HB 4204 and, among other demands, Midland represented that Corvallis Hospitality would need to pay all third party costs and special servicing fees, which are again barred by HB 4204.  Thereafter, on January 27, 2021, Midland followed up by informing Corvallis Hospitality via email that the Trust is "moving forward with the foreclosure of the assets.  The offer you provided (as seen below) is not something we will accept."  The referenced offer from Corvallis Hospitality included the request for the deferral of missed payments in 2020.

Corvallis Hospitality resumed full Loan payments starting in January 2021, which have continued to the present.  Although, a few payments were mere days late, instead of charging a late fee when the payment was accepted, the Trust continued to charge default interest, late charges, special servicer fees and additional fees claiming the Loan remained in default due to the 2020 payment defaults during the Emergency Period.  On March 31, 2021, counsel for the Trust sent an additional letter to Corvallis Hospitality claiming payments had not been made for January 2021 through March 2021, despite payments having been made by Corvallis Hospitality and accepted by the Trust.  The letter additionally stated that Corvallis Hospitality remained liable for default interest, special servicer fees, workout fees and default related fees.  Counsel for the Trust claimed and continues to claim that HB 4204 does not apply to the Trust and demanded payment of $1,118,422.22, which included significant fees the Trust is barred from collecting under HB 4204 and alleged missed payments directly attributable to the payments missed in 2020 during the Emergency Period.  Counsel for the Trust again threatened foreclosure and receivership in the March 31, 2021 letter.

On April 15, 2021, counsel for the Trust sent Corvallis Hospitality a reservation of rights letter which acknowledged payments were received between October 2020 and April 2021, which the Trust labeled "partial payments", contending that amounts were still due for payments missed in 2020.  On April 19, 2021, the Trust then through its foreclosure trustee, Beacon, recorded a Notice of Default and Election to Sell contending payments were missed January 2021 through April 2021 and demanding default interest, late fees, special servicer fees, workout fees, appraisal fees, attorneys' fees and other fees and costs.  The initial foreclosure sale date was set for September 14, 2021 in Benton County, Oregon.

Corvallis Hospitality continued to provide term sheets and proposals to the Trust for consideration in an attempt to workout the alleged default.  On August 4, 2021, Midland responded by stating that any deal would involve payment of attorneys' fees, a forbearance fee of around $120,000, special servicer fees of about $58,000 and third party costs.  The Trust was again requesting fees barred by HB 4204.  On August 13, 2021, Midland sent a follow up email stating:  "In order for you to get out of default, you would have had to of [sic] reinstated the loan by paying not only debt service, but all reserves, fees and costs **by the end of the moratorium**.  The default interest and late fees from right now are probably in $600,000 range calculating from the end of the moratorium on Jan 7, 2021." (Emphasis added)  This communication informed Corvallis Hospitality again that it allegedly remains in default because it failed to make all Loan payments in 2020 along with all additional fees, expenses and charges the Trust elected to apply to the Loan based on the alleged default.  These demands directly violate HB 4204.

On September 2, 2021, Corvallis Hospitality contacted Midland to explain the actual status of the Loan as follows: "Based on the loan transaction history which includes payments made for 2021 scheduled loan payments (estimated as borrower has no access to mortgage statements currently), borrower should not be subject to default interest during 2021.  Late charges may due for January through March 2021 due to timing of payments made by borrower, but would only be an amount of approximately $22,000."  Corvallis Hospitality further reiterated that "payments outstanding for scheduled 2020 would be added to loan maturity due to Oregon

law, as we understand it."  As explained by Corvallis Hospitality in this communication, the Trust did not send mortgage statements in 2021 based on the alleged 2020 payment defaults.

On September 8, 2021, Midland on behalf of the Trust acknowledged that all payments were made in 2021 but continued to allege that the Loan remained in default because it was not "reinstated" at the end of the moratorium.  Specifically, Thomas Welek of Midland stated in writing: "As I mentioned below, I spoke with counsel and the loan would have had to be FULLY reinstated by January 7th, 2021 to remove the default.  That did not happen, so Default interest and late Fees have been accumulating since that date.  **I understand you made payments to cover the payments from January 2021 on, but the loan was not reinstated at the end of the moratorium, so you were still in default**." (Emphasis Added).  Corvallis Hospitality continued through the date of the filing of the complaint in State Court to negotiate a resolution with the Trust.  The Trust continues to allege that Corvallis Hospitality is in default due to the 2020 missed payments entitling the Trust to excessive workout fees of approximately $265,000[3], special servicer fees and penalties.  The Trust also continues to contend that it is exempt from HB 4204.

Corvallis Hospitality paid the Trust $316,450.28 between October 2020 and December 2020.  It is unclear where and how those payments were applied.  In addition, Corvallis Hospitality understands that the Trust applied regular 2021 Loan payments to fees, charges and expenses allegedly due to 2020 payment defaults, while continuing to charge default interest, late charges and other fees on alleged past amounts due.

The Trust continues to assert that it is authorized to foreclose based on the payments missed in 2020 (during the Emergency Period).  Not only did Corvallis Hospitality make all payments in 2021 as acknowledged by the Trust, Corvallis Hospitality was not required to make the payments the Trust demanded in 2020, which could have been used for purposes of paying

---

[3] The Trust appears to acknowledge that there is no provision in the Loan Documents, which authorizes or calculates this type of "workout fee", but nonetheless demands this fee along with other fees, costs and expenses that would be prohibited by HB 4204.

amounts due in 2021 to the extent any amounts were not paid when due.  Essentially, the Trust argues it is exempt from HB 4204 and can foreclose under Oregon law based on the doctrine of federal preemption because the Trust is allegedly a national bank.  However, the Trust is not acting in the capacity as a national bank engaged in the business of lending or even making loans.  Rather, it is the trustee of a trust holding loans for the benefit of investors and collecting loan payments on a loan originated by a private non-federal lender.  Most importantly, the Trust remains subject to state foreclosure laws, usury laws and collection laws and was attempting to reap the benefit of these laws by foreclosing non-judicially under the Oregon Trust Deed Act.

## II.    Argument.

Abstention is a doctrine of equitable restraint by federal courts that is based on principles of comity, cooperative federalism and judicial economy.  *See, Burford v. Sun Oil Co.*, 319 U.S. 315, 332 (1943) (federal courts "restrain their authority because of 'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary"); *Brillhart v. Excess Ins. Co. of Amer.*, 316 U.S. 491, 495 (1942); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995); *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976) (federal court may abstain from exercising diversity jurisdiction when a similar action is pending in state court).  The Supreme Court has recognized various forms of abstention reflecting these principles which empower and, in some instances, compel federal courts to abstain from their obligation to adjudicate claims within their jurisdiction.  Those forms of abstention are discussed below.

### A.  Burford Abstention.

The Supreme Court's decision in *Burford v. Sun Oil Co.* provides that when the issue involves state policy, "equitable discretion should be exercised to give [state] courts the first opportunity to consider them."  319 U.S. at 332.  In such situations, a "federal court should refrain from exercising its jurisdiction . . . to avoid needless conflict with the administration by a state of its own affairs."  *Beck v. California*, 479 F.Supp. 392 (CD Cal. 1979); *Tucker v. First Maryland Sav. & Loan, Inc.*, 942 F.2d 1401, 1407 (9th Cir. 1993) (abstention limits federal

interference with the development of state policy within the special competence of local courts and is justified where the issues presented in federal court are primarily state law questions).

The Supreme Court stated in *Burford* that:

> Although a federal equity court does have jurisdiction of a particular proceeding, it may, in its sound discretion, whether its jurisdiction is invoked on the ground of diversity of citizenship or otherwise, 'refuse to enforce or protect legal rights, the exercise of which may be prejudicial to the public interest'; for it is 'in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy.'

319 U.S. at 317-318.

When deciding whether to invoke *Burford* abstention, courts have considered whether the case before it is based on federal or state law, the degree of specificity of the state legislative/regulatory scheme at issue, the necessity of discretionary interpretation of state statutes to resolve the matter and whether the subject matter of the litigation is traditionally one of state concern. *See, e.g. Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311, 314 (5th Cir. 1993); *see, also, Forde v. First Horizon Home Loan Corp.*, 2010 WL 5758614, *3 (D. Az. Dec. 6, 2010). The Ninth Circuit has held that *Burford* abstention applies when the state has chosen to concentrate suits challenging the actions at issue in a particular court, that federal issues could not be separated easily from complex state law issues with respect to which state courts might have special competence and that federal review might disrupt state efforts to establish a coherent policy. *U.S. v. Morros*, 268 F.3d 695, 705 (9th Cir. 2001).

In *Forde*, the District Court of Arizona held it appropriate to abstain from hearing a case brought by a borrower in state court against her lender to quiet title to real property, breach of contract, negligence and fraud, which the lender removed to federal court. In analyzing the *Burford* abstention elements, the court concluded that the issues involved in the suit (lender's compliance with state law regarding real property mortgages and foreclosure) were issues subject to specific Arizona statutory and regulatory schemes and involving complex state administrative processes. Therefore, it abstained from exercising diversity jurisdiction. 2010 WL 5758614 at *3.

In *AMS Marketing, Inc. v. Fidelity Sec. Life Ins. Co*, 830 F. Supp. 1284 (D. Az. 1993), the court remanded a case back to state court under the *Burford* doctrine.  A wholly owned subsidiary of an insurer sued its parent for breach of contract in state court.  The plaintiff had been placed by receivership in state court and the defendant removed the action on diversity grounds.  The court held that the handling of the affairs of insolvent insurance companies is generally the responsibility of the states and federal courts have been reluctant to interfere in state receivership proceedings, noting that there is "no doubt that this is a matter of substantial state concern."  *Id.* at 1286-87.  The court found that the state had concentrated suits involving the local issue in a particular forum, noting the filing of the receivership action in state court.  *Id.* at 1287.  Finally, the court found that the actions were based on state law and a risk was present that the exercise of jurisdiction would disrupt the state's coherent policy and its right to regulate the business of insurance.  *Id.*

1. *This case involves questions of state law regarding important public policy of protecting Oregon businesses from adverse impacts of the COVID-19 pandemic.*

HB 4204 was enacted for the important purpose of protecting Oregon businesses, like Corvallis Hospitality's hotel, from the economic devastation dealt to the tourism and hospitality industry by such things as stay-at-home orders that prevented people from patronizing hotels and restaurants.  The Legislative Assembly found that HB 4204, while limiting lenders' exercise of contractual remedies, such limitations were not substantial because the provisions had a limited scope and duration and were necessary to protect the public health, safety and welfare. The Legislative Assembly found that,

> for these reasons the provisions do not undermine a contractual bargain, interfere with a party's reasonable expectations or prevent a party from safeguarding or reinstating the party's rights. . . Even if a provision of this section has the effect of undermining a contractual bargain, interfering with a party's reasonable expectations or preventing a party from safeguarding or reinstating the party's rights, the provision is appropriate and reasonable as a means by which to implement the significant and legitimate public purpose of responding to the declaration of a state of emergency issued by the Governor on March 8, 2020.

HB 4204 (1)(b) and (c).

HB 4204 includes specific regulatory requirements for implementation.  For example, the bill requires lenders to issue notices to borrowers, as Wells Fargo (the master servicer) did to Corvallis Hospitality, to provide borrower's with notice of their rights under the bill.  Lenders must defer payments and forego charging fees if a borrower qualifies for relief or if the Lender and borrower do not otherwise negotiate a forbearance or modification during the Emergency Period.  The regulatory objective is to ensure that Oregon residential and commercial borrowers receive relief from the unprecedented COVID pandemic without the threat of foreclosure, excessive fees and loan defaults solely related to the inability to make payments due to lost income during the Emergency Period.  There is no question that the subject of the litigation and regulatory scheme involves complicated questions of state law and important public policy that are best left for resolution in the pending State Court proceedings.

   2.   _An exercise of jurisdiction of this case would disrupt Oregon's efforts to establish a coherent policy of lender practices associated with the Emergency Period under HB 4204._

As the Supreme Court stated in _Burford_, "equitable discretion should be exercised to give [state] courts the **first** opportunity to consider them."  491 U.S. at 326 (emphasis added).  Courts have held that in such situations, a "federal court should refrain from exercising its jurisdiction . . . to avoid needless conflicts with the administration by a state of its own affairs."  _Tucker v. First Maryland Sav. & Loan, Inc_. 942, F.2d 1401, 1407 (9th Cir. 1993).  There is no written decision about which counsel is aware regarding the substance of a claim for violation of HB 4204 by a lender.  This Court should exercise its equitable discretion to allow the State Court the first opportunity to consider such issues.

   3.   _Oregon has chosen to concentrate suits for HB 4204 violations in the circuit courts for the state of Oregon._

HB 4204 (8) provides that a borrower who has suffered "an ascertainable loss of money or property because a lender took an action prohibited under [HB 4204] may bring an action in a

circuit court of this state to recover the borrower's actual damages." Thus, Oregon has chosen a "particular court" for suits and controversies involving HB 4204.

4. *There are no true federal claims in this case and if any exist, they can be easily separated from the state law issues with respect to which Oregon state courts have special competence.*

The claims brought by Corvallis Hospitality are all state law claims. Likewise, Defendants admit in their Notice of Removal (ECF #1) that the only basis for subject matter jurisdiction for this case is diversity jurisdiction. Nowhere in their Notice of Removal do the Defendants allege federal question jurisdiction. The counterclaims that they recently pled, similarly, do not raise any true federal claims.[4] Further, any preemption issues may certainly be determined by the State Court. *Turnbow v. Pacific Mutual Life Ins. Co.*, 934 F.2d 1100, 1103 (9th Cir. 1991). Clearly, federal claims, to the extent they exist, can be easily separated from the state law issues.

Oregon courts have special competence in adjudicating Oregon Trust Deed Act claims. *See, e.g., Brandup v. Recontrust Co., N.A.*, 353 Or. 668 (2013) (United States District Court certified several questions regarding interpretation of the Oregon Trust Deed Act relative to claims made by lenders in foreclosure cases). Analogously, Oregon courts would certainly have special competence in analyzing HB 4204 claims.

For all of the foregoing reasons, this Court should abstain from hearing this case and remand it back to the State Court consistent with the *Burford* doctrine.

**B. The Brillhart/Wilton Doctrine requires abstention.**

Each of Defendants' affirmative defenses and counterclaims are entirely dependent upon a finding that Defendants are not subject to HB 4204. Essentially, Defendants are requesting that the court issue a declaratory judgment, which would enable Defendants to rely on the alleged

---

[4] While Defendants allege a counterclaim styled as "Taking and Impairment of Contract" and make reference to the Fourth and Fifth Amendments of the United States Constitution, there is no state or governmental actor that has been made a party to this lawsuit. Thus, it is not a colorable claim. Moreover, it alleges rights under the Oregon constitution as well.

affirmative defenses and pursue alleged counterclaims.  Without such a judicial determination, Defendants simply have no evidentiary support for the defenses or claims pled in the Answer.

The *Brillhart/Wilton* doctrine is based on the substantial discretion conferred under the Federal Declaratory Judgment Act.  The Declaratory Judgment Act provides that any court of the United States may decide the legal rights of any interested parties seeking a declaration of an actual controversy within its jurisdiction. 28 U.S.C. § 2201.7.   The Declaratory Judgment Act was "designed to enhance" the "principles of judicial economy and cooperative federalism." *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1224 (9th Cir. 1998). The Declaratory Judgment Act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co*., 515 U.S. 277, 286 (1995); *see also, Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) (the Act gives a district court "competence to make a declaration of rights; it [does] not impose a duty to do so").   Based upon the "substantial discretion" provided under the Act, "declaratory actions do not invoke the federal judiciary's 'virtually unflagging obligation' to exercise its jurisdiction" in cases where the relief sought is limited to declaratory and injunctive relief. *U.S. v. Las Cruces*, 289 F.3d 1170, 1181 (10th Cir. 2002) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).  These principals form the basis for the *Brillhart/Wilton* doctrine.

In *Brillhart v. Excess Ins. Co. of Amer*., 316 U.S. 491, 495 (1942), the Supreme Court held that "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart v. Excess Ins. Co. of Amer*., 316 U.S. 491, 495 (1942). The Court went on to find that "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Id*. Rather, those circumstances dictate that the state court is the preferred venue.  *Id*.; *see also, Wilton*, 515 U.S. at 286.

The Ninth Circuit follows this approach.  More specifically, when a state court action is pending that presents the same issue of state law as in a federal declaratory suit, the Ninth Circuit

has stated that "there is a presumption the entire suit should be heard in state court." *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1366-67 (9th Cir. 1991) (citing *Brillhart*, 316 U.S. at 495); see also, *Amer. Nat. Fire Ins. Co. v. Hungerford*, 53 F.3d 1012 (9th Cir. 1995) (overruled, in part, by *Dizol*, 133 F.3d at 1224). Indeed, "[w]hen an ongoing state proceeding involves a state law issue predicated on the same factual transaction or occurrence in a matter pending before a federal court, the state court is the more suitable forum for a petitioner to bring a related claim." *Hungerford*, 53 F.3d at 1017.

In determining whether the *Brillhart/Wilton* doctrine applies, the court should consider whether it "should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation." *Dizol*, 133 F.3d at 1225; see also, *Chamberlain*, 931 F.2d at 1367; *Huth v. Hartford Ins. Co.*, 298 F.3d 800, 803 (9th Cir. 2002). In addition, the Ninth Circuit provided additional factors to assist courts in deciding whether to exercise jurisdiction, which include: whether the declaratory action will settle all aspects of the controversy; whether it will serve a useful purpose in clarifying the legal relations at issue; whether it is merely for the purposes of procedural fencing or to obtain a "res judicata" advantage; whether it will result in entanglement between the federal and state court systems; the convenience of the parties; and the availability and relative convenience of other remedies. *Dizol*, 133 F.3d at 1225, n.5; *Maxum Indem. Co. v. Kaur*, 356 F. Supp. 3d 987, 994 (E.D. Cal. 2018) (O'Neill, J.); *R.R. Street & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966 (9th Cir. 2011).

In this case, there is no dispute that the proceeding in the State Court involves state law issues predicated on the same factual transaction as the matter now pending in federal court. As confirmed by the *Hungerford* court, the State Court is the more suitable forum for Defendants to bring and assert the counterclaims. The enforceability of HB 4204 does not need to be determined in federal court. In fact, the text of HB 4204 specifically contemplates legal action in the Circuit Courts of the State of Oregon. HB 4204, Section 8. Defendants' counterclaims pled after removal to federal court are veiled claims seeking to first establish declaratory rulings that

HB 4204 is inapplicable, which serve as a means to forum shop the actual claims. To avoid improper forum shopping, the court must consider whether there is a procedural vehicle in state court to resolve the issues raised in the action filed in federal court. *Chamberlain*, 931 F.2d at 1367; *Polido v. State Farm Mut. Auto. Ins. Co.*, 110 F.3d 1418, 1423 (9th Cir. 1997), overruled in part, by *Dizol*, 133 F.3d 1220. "[T]o determine to which party the second *Brillhart* factor tips, courts have looked to whether the declaratory relief action could have been filed in state court and "coordinated with the pending state court actions." *Advent, Inc. v. Nat. Union Fire Ins. Co.*, No. 13-cv-0561-LHK, 2013 WL 3483742, *5 (N.D. Cal. July 8, 2013) (citing *Great Am. Assurance v. McCormick*, No. 05–2175, 2005 WL 3095972, *2 (N.D. Cal. Nov. 15, 2005) (Applying *Brillhart*, the district court held plaintiff engaged in forum-shopping by not filing a declaratory relief action in state court where such action could have been coordinated with pending state court actions).

Clearly, Defendants could have brought their alleged claims in Benton County, which is confirmed by Defendants' representations to the State Court that Defendants would be responding to the Motion for Preliminary Injunction. Instead, Defendants are requesting that the District Court declare the rights of the parties associated with a specific and unique Oregon state law that was designed to be heard in the circuit court of Benton County where the claims were initiated. The presumptions set forth in the *Brillhart/Wilton* doctrine apply to the facts at hand. Simply put, the State Court is the more suitable forum for these claims and counterclaims to be heard.

### C.  The Younger Doctrine requires abstention.

The "Younger" doctrine of abstention, which provides that federal courts are not to interfere with pending state criminal proceedings, also applies to civil cases. *Younger v. Harris*, 401 U.S. 37, 40-41 (1971).; *see also, Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Under that doctrine, a federal district court must abstain from hearing a federal case when (i) there is an ongoing state judicial proceeding, (ii) it implicates important state interests and (iii) the state proceedings provide an adequate opportunity to raise

any federal claims. See, e.g., *Larsen v. CIGNA HealthCare Mid-Atlantic, Inc.*, 224 F.Supp.2d 998, 1006-07 (D. Md. 2002) (remanding to abstain from declaratory judgment challenge to state insurance utilization review scheme because of on-going state proceedings involving the same parties and because the action implicated important state interests in regulating insurance, notwithstanding possible federal ERISA preemption issues).

In *Forde*, the district court noted that there was a pending state court action in which plaintiff had filed her complaint (which the defendants had removed), that the plaintiff's complaint raised no potential federal claims, and that the defendants removed solely on diversity grounds. 2010 WL 5758614, *3. The court found that the plaintiff's complaint implicated important interests of preserving the authority of the state's judicial system to be free of interference by the district court, citing case law that foreclosure and ejectment proceedings are important interests under the *Younger* doctrine. Id. (*citing, Prindable v. Association of Apartment Owners of 2987 Kalakaua*, 304 F.Supp.2d 1245, 1262 (D. Haw. 2003). On that basis, the court held that, "pursuant to *Younger* and its progeny, the Court should abstain from reaching the merits of the matter." *Id.*

In this case, there is a state court proceeding pending in the State Court that involves all state law claims brought by Corvallis Hospitality – there are no federal claims. The State Court is uniquely competent to adjudicate those claims, particularly the HB 4204 and Oregon Trust Deed Act claims. Those claims raise important interests of the state as indicated by the language cited above in HB 4204 regarding the emergency posed by the pandemic and the important interests in foreclosure proceedings on real property in the state. There are no federal claims raised in the Corvallis Hospitality complaint or true federal claims raised by Defendants in their counterclaim and, as cited above, any preemption issues can be adequately resolved in the State Court. Therefore, this Court should abstain from deciding the issues in this case and remand the case to State Court under the *Younger* doctrine.

**D.      The Court should abstain under the *Colorado River* doctrine based on the exceptional circumstances of the pandemic and the State's interest in maintaining local control over HB 4204.**

In *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 821 (1976), the Supreme Court held that, in addition to *Burford* and *Younger* abstention, a federal court sitting in equity is permitted to dismiss or remand a case based on abstention principles in other extraordinary circumstances, such as a state's interest in maintaining local control over difficult questions of state law bearing on substantial public policy problems.  "*Colorado River* and its progeny provide a multi-pronged test for determining whether 'exceptional circumstances' exist warranting federal abstention from concurrent federal and state proceedings." *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 841 (9th Cir. 2017). The Court evaluates eight factors to determine the appropriateness of a stay or dismissal under *Colorado River*, "with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* at 842 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)). The factors are as follows:

> (1) which court first assumed jurisdiction over any property at stake;
> (2) the inconvenience of the federal forum;
> (3) the desire to avoid piecemeal litigation;
> (4) the order in which the forums obtained jurisdiction;
> (5) whether federal law or state law provides the rule of decision on the merits;
> (6) whether the state court proceedings can adequately protect the rights of the federal litigants;
> (7) the desire to avoid forum shopping; and
> (8) whether the state court proceedings will resolve all issues before the federal court.

*Seneca Ins. Co.,* 862 F.3d at 841–42 (quoting *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 978–79 (9th Cir. 2011)).

In this case, the State Court first assumed jurisdiction over the hotel property at issue when Corvallis Hospitality filed its complaint, which favors abstention.  The second and third factors are neutral.  The order in which the forums obtained jurisdiction favors abstention because the State Court had jurisdiction first.  State law provides the rule of decision on the merits of all of the claims asserted by both parties, which favors abstention. The State Court can adequately protect the rights of Corvallis Hospitality and the Defendants, which favors

abstention. There is clearly a desire for forum shopping by Defendants, which weighs in favor of abstention. Finally, if the proceeding was remanded, the State Court would resolve all issues before this Court, which favors abstention. Thus, of the eight factors, six favor abstention and two are neutral. Moreover, the importance of the Oregon state courts to control the important public policy issues addressed by the state in HB 4204 over residential and commercial real property impacted by the pandemic dictates abstention. Therefore, this Court should abstain from deciding this case under the *Colorado River* doctrine and remand it to the State Court.

## **CONCLUSION**

For all of the foregoing reasons, this Court should abstain from hearing this matter and remand the case back to State Court.

DATED this 4th day of February, 2022.

FOSTER GARVEY PC

By  */s/ Tara J. Schleicher*
    Tara J. Schleicher, OSB #954021
    Telephone:  (503) 228-3939
    Fax:  (503) 226-0259
    E-Mail:  Tara.Schleicher@foster.com
    *Attorney for Corvallis Hospitality*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 6,991 words, including headings, footnotes, and quotations, but excluding the caption, signature block, exhibits, and any certificates of counsel.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I served the foregoing **PLAINTIFF'S MOTION TO REMAND** on the following:

- **Jason M. Ayres**
  jason.ayres@foster.com,kesarah.rhine@foster.com
- **Douglas R. Pahl**
  dpahl@perkinscoie.com,NLeSage@perkinscoie.com,docketpor@perkinscoie.com,kflores@perkinscoie.com
- **Tara J. Schleicher**
  Tara.Schleicher@foster.com,kesarah.rhine@foster.com

by the following indicated method or methods on the date set forth below:

☒        **CM/ECF system transmission.**

DATED this 4th day of February, 2022.

*/s/ Tara J. Schleicher*
Tara J. Schleicher