IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CORVALLIS HOSPITALITY, LLC., an Oregon limited liability company, | Case No.: 6:22-CV-00024-MC |
| Plaintiff, | |
| vs. | OPINION AND ORDER |
| WILMINGTON TRUST, NATIONAL ASSOCIATION, as TRUSTEE FOR THE BENEFIT OF THE HOLDERS OF LCCM 20127-LC26 MORTGAGE TRUST COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2017-LC26; MIDLAND LOAN SERVICES, INC., a Delaware Corporation; and BEACON DEFAULT MANAGEMENT, INC., a California Corporation, | |
| Defendants. | |

MCSHANE, J.:

Plaintiff Corvallis Hospitality, LLC. brings this breach of contract action against Defendants, Wilmington Trust, National Association, Midland Loan Services, Inc., and Beacon Default Management, Inc., (collectively, "Defendants").[1] Defendants move for judgment on the pleadings on all claims. For the following reasons, Defendant's Motion is granted.

---

[1] On September 6, 2022, the Court granted Plaintiff's Motion to Consolidate the current action with its associated case, *Wilmington Trust, National Association, et al. v. Lawson*, 6:22-cv-

1 – OPINION AND ORDER

BACKGROUND

Plaintiff is the owner and operator of the Hilton Garden Inn Corvallis, a hotel located on the campus of Oregon State University. Pl.'s Compl. ¶ 1, ECF No. 1. On May 3, 2017, Plaintiff entered into a Loan Agreement with a private lender, Ladder Capital Finance, LLC., evidenced by a promissory note, for the principal amount of $18,000,000.00. Pl.'s Compl. ¶ 5. The loan and note were secured by a Leasehold Deed of Trust, Assignment of Leases and Rents and Security Agreement (the "Deed of Trust") with Defendant Beacon serving as trustee and Ladder Capital Finance, LLC. as beneficiary. *Id.* at ¶¶ 5-6. After several assignments, Defendant Wilmington Trust is now the beneficiary under the Deed of Trust and asserts that it is also the owner of the Note and the secured party and assignee under the Loan Documents. *Id.* at ¶ 6. Midland is the special servicer for the loan. *Id.* at ¶ 3.

On June 30, 2020, Oregon Governor Kate Brown signed into law House Bill 4204, which created a COVID-19 "emergency period" from March 8, 2020, to September 30, 2020. *Id.* at ¶ 7; H.B. 4204, 80th Leg., 1st Spec. Sess. (Or. 2020). The purpose of HB 4204 was to temporarily protect borrowers experiencing pandemic-related financial hardships from going into default if they missed monthly payments on their loans. Pl.'s Compl. ¶ 7. Section 1 of HB 4204 provided, among other things, that during the emergency period lenders were prohibited from treating missed payments as a default, imposing fines, or initiating foreclosure actions against borrowers. HB 4204 § 1(3)(A). Instead, borrowers were permitted to defer payments due during the emergency period, "to the scheduled or anticipated date on which full performance of the obligation is due." HB 4204 § 1(3)(a)(B). Notably, Section 1 also provided a legal remedy for

---

00993-MK. ECF No. 30. All cited CM/ECF numbers refer to the docket in the lead case, *Corvallis Hospitality, LLC., v. Wilmington Trust, et al.* 6:22-cv-00024-MC.

borrowers against lenders who violated any portion of Section 1 of HB 4204 during the emergency period.² HB 4204 § 1(8)(a).

Section 2 of HB 4204 stated that all mandates in Section 1 are automatically repealed 90 days after the expiration of the emergency period. HB 4204 § 2. Governor Brown extended the COVID-19 emergency period under HB 4204 to December 31, 2020, and the statute was naturally repealed 90 days later, on March 31, 2021. Defs.' Mot. J. Pleadings 3–4, ECF No. 18; Exec. Order No. 20–37. On June 1, 2021, Governor Brown signed House Bill 2009, formally repealing Section 1 of HB 4204, effective June 1, 2021. Defs.' Mot. J. Pleadings 4; H.B. 2009 § 2, 81st Leg., Reg. Sess. (Or. 2021).

Between May and October of 2020, Plaintiff faced pandemic related financial hardships and failed to make timely payments to the Trust on the Loan. Pl.'s Compl. ¶ 14. On October 7, 2020, during the COVID-19 emergency period, Defendant Wilmington Trust notified Plaintiff that it was in default, imposed late fees and interest on the default payments, and accelerated the amount due on the loan. *Id.* at ¶ 16. Plaintiff began making payments again from October to December of 2020, but Defendants still considered Plaintiffs to be in default. *Id.* at ¶ 18. After several months of negotiations, the parties were unable to reach a "workout" agreement. On April 19, 2021, Defendant Beacon, acting on behalf of the Trust, initiated nonjudicial foreclosure proceedings against Plaintiff by filing a Notice of Default and Election to Sell document. *Id.* at ¶¶ 14–24. The Notice detailed the amount of money necessary to reinstate the loan and imposed additional fees including a "workout" fee.³ *Id.* at ¶ 24.

---

² HB 4204 provides, "a borrower that suffers an ascertainable loss of moneys or property because a lender or trustee took an action prohibited under this section may bring an action in a circuit court of this state to recover the borrower's actual damages." HB 4204 § 1(8)(a).

³ Plaintiff argues that the Defendant's demand for a $205, 362.01 workout fee was not authorized by the Loan Agreement. Pl.'s Compl. ¶ 38.

3 – OPINION AND ORDER

On December 14, 2021, Plaintiff filed this action against Defendants in Benton County Circuit Court, alleging the following claims: (1) violation of HB 4204, (2) violation of the Oregon Trust Deed Act ("OTDA"), (3) breach of the covenant of good faith and fair dealing; and (4) seeking an injunction to prevent Defendants from foreclosing on the Deed of Trust. Pl.'s Compl. On December 20, 2021, the circuit court ordered a temporary restraining order to prevent Defendants from proceeding with the nonjudicial foreclosure. *Id.* Ex. A, at 111, ECF No. 1. Defendants cancelled the nonjudicial foreclosure sale and now await an order from the Court.[4] Defs.' Answer ¶ 78, ECF No. 5. Defendants timely removed this case to the United States District Court for the District of Oregon, and this Court denied Plaintiff's Motion to Remand to state court. ECF Nos. 1, 7, 16.

On June 22, 2022, Defendants moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Defs.' Mot. J. Pleadings, ECF No. 18.

## STANDARDS

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). To survive a motion for judgment on the pleadings, a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678.

---

[4] On July 7, 2022, Defendants filed their own judicial foreclosure action against William Lawson, representative of Corvallis Hospitality in the U.S. District Court for the District of Oregon. 6:22-cv-00993-MK (now consolidated with this case.)

4 – OPINION AND ORDER

"Judgment on the pleadings is properly granted when there is no issue of material fact, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (quoting *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 979). The court must accept the complaint's factual allegations as true and construe those facts in the light most favorable to the non-movant, *id.*, but the court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555. Once the complaint is stripped of conclusory statements, the judge then applies "judicial experience and common sense" and considers "obvious alternative explanations" to determine if the complaint states a plausible cause of action. *Iqbal*, 556 U.S. at 679, 682 (quoting *Twombly*, 550 U.S. at 567) (internal quotation marks omitted). If the complaint is dismissed, leave to amend should be granted unless the court "determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## DISCUSSION

Plaintiff's claims for relief arise out of Defendant's alleged (1) violations of HB 4204 and (2) the imposition of an unauthorized "workout" fee. Pl.'s Compl. ¶¶ 31-54. Defendants contend that notwithstanding the facts alleged in the Complaint, Plaintiff's claims for relief fail as a matter of law because they rely, in whole or in part, on alleged violations of a repealed statute. Defs.' Mot. J. Pleadings 6.  Additionally, Defendant argues that Plaintiff's claims based on the unauthorized imposition of a workout fee fail, because the Loan Agreement expressly authorizes such a fee.

   I.  **Claims based on violations under HB 4204**

This case turns on whether Plaintiff may commence an action after the date that HB 4204 was repealed, for violations that allegedly occurred while the statute was in effect. Plaintiff

insists that the plain language of HB 4204 provides a continuous avenue for private action, even after the statute's repeal. Pl.'s Resp. 5.

In interpreting the meaning of an Oregon statute, the Court must look to: (1) the text and context of the statute; (2) the legislative history; and (3) general maxims of statutory construction to resolve any remaining uncertainties. *State v. Gaines*, 346 Or. 160, 171–72 (2009). Typically, Courts only resort to the general maxims of statutory construction if, after analyzing the text and legislative history, "the legislature's intent remains unclear." *Id.* at 172. Because there is no legislative history to reference, the Court will consider the plain language of both HB 4204 and HB 2009 and the general maxims of statutory construction regarding repealed statutes.

A. **Text and Context**

"In this first level of analysis, the text of the statutory provision itself is the starting point for interpretation and is the best evidence of the legislature's intent." *Portland Gen. Elec. Co. v. Bureau of Labor and Indus.*, 317 Or. 606, 610 (1993) (superseded by statute on other grounds). The legal remedy provision in Section 1 of HB 4204 states,

> [A] borrower that suffers an ascertainable loss of moneys or property because a lender or trustee took an action prohibited under this section may bring an action in a circuit court of this state to recover the borrower's actual damages. A borrower who prevails in the action may also recover the borrower's court costs and attorney fees.

HB 4202 § 1(8)(a). As Plaintiff points out, the statute is silent on when a lawsuit must be filed, or whether one can be filed after the expiration of the emergency period. Pl.'s Resp. 5. But the text of HB 2009 resolves any ambiguity by expressly repealing Section 1 of HB 4204 in its entirety, including its cause of action provision. Section 2 of HB 2009 provides:

> Section 2, chapter 4, Oregon Laws 2020 (first special session), is amended to read:
> Sec. 2. *Section 1* [of this 2020 special session Act], chapter 4, Oregon Laws 2020 (first special session), *is repealed* [90 days after the expiration of the emergency

6 – OPINION AND ORDER

      period as defined in section 1 of this 2020 special session Act] on the effective date of this 2021 Act. (emphasis added).

HB 2009 § 2. On June 1, 2021, the Oregon legislature expressly repealed Section 1 of HB 4204 in its entirety and did not provide a savings clause or any other mechanism to preserve current and future claims arising under the repealed statute. "The chief value of an express repeal is the fact that it generally leaves no uncertainty whether the statutes or parts of statutes designated have been repealed." 1A Sutherland, *Statutory Construction* § 23:7 (7th ed., 2021).

      Plaintiff argues that the plain language in HB 4204 *implies* that the legislature anticipated that claims would arise after the natural expiration of the statute. Pl.'s Resp. 5. Plaintiff points to a provision in Section 1 stating, "the lender shall . . . [p]ermit the borrower to pay an amount the borrower owes to the lender as a result of a deferral . . . at the *scheduled or anticipated date on which full performance of the obligation is due.*" HB 4204 § 1(3)(a)(B) (emphasis added). Plaintiff suggests that because HB 4204 allows borrowers to pay the missed payments on the maturity date of the loan, a cause of action might accrue possibly years down the line, well after the expiration of the emergency period. Pl.'s Resp. 5–6. Plaintiff avers that the legislature must have anticipated this, and therefore, intended for borrowers to bring suits under HB 4204 well after the emergency period expired.[5] *Id.*

---

[5] Plaintiff has no basis for reaching this conclusion. As there is no legislative history, the best way to assess the intent of the legislature is by examining the text of the statute. *Gaines*, 346 Or. at 171. Section 1(b) of HB 4204 states "The effects of the provisions in this section are not substantial because the provisions have a limited scope and duration . . . [f]or these reasons the provisions do not undermine a contractual bargain, interfere with a party's reasonable expectations, or prevent a party from safeguarding or reinstating a party's rights." If anything, this text implies that the legislature did not intend for any provision in Section 1 to remain in force beyond the "limited duration" of the emergency relief period.

7 – OPINION AND ORDER

Relying on this line of reasoning, Plaintiff would have this Court read into HB 2009 an implied savings clause that does not exist. This Court has no obligation to insert words into a statute that the legislature chose to omit. *Whipple v. Howser*, 291 Or. 475, 480 (1981) ("[W]e are not at liberty to give effect to any supposed intention or meaning in the legislature, unless the words to be imported into the statute are, in substance at least, contained in it."). Oregon Law specifically advises:

> In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all.

OR. REV. STAT. tit. 17, § 174.010. If the legislature intended for claims arising under HB 4204 to survive the repeal of the statute, then it would have expressly preserved those claims in Section 2 of HB 2009. "[T]here is no more persuasive evidence of the intent of the legislature than the words by which the legislature undertook to give expression to its wishes." *Gaines*, 346 Or. at 171 (internal quotations omitted).

B. **General Maxims of Statutory Construction**

The general maxims found in Oregon case law also support the Court's conclusion. Whether any portion of an expressly repealed statute remains in force, absent a savings clause, is no novel issue. "For more than a century, the general rule . . . [has been] that when an act of the legislature is repealed, it must be considered, except as to transactions past and closed, as if it never existed." *Yakima Valley Mem. Hosp. v. Wash. State. Dep't. of Health*, 654 F3.d 919, 934 (9th Cir. 2011) (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868) (internal quotations omitted); *See also*, *Newsom v. Greenwood*, 4 Or. 119, 121–22 (1871) ("the effect of repealing a statute is to obliterate the statute repealed as completely as if it had never been passed.");

8 – OPINION AND ORDER

Sutherland § 23:7 ("The repeal of a statute without any reservation takes away all remedies given by the repealed actions and defeats all actions and proceedings pending under it at the time of its repeal.").

The only way Plaintiff's cause of action could possibly go forward after HB 4204's repeal is (1) if Plaintiff commenced the action while the emergency period was still in effect, and (2) Oregon lawmakers expressly enacted a savings clause to preserve pending claims under HB 4204. *Yakima Valley Mem. Hosp*, 654 F.3d at 934; *Daghlian v. DeVry Univ., Inc.*, 574 F.3d 1212, 1213 (9th Cir. 2009) (order) (denying appellants action where all claims were based on repealed statute without a savings clause). Neither of these conditions exist here.

Because Plaintiff cannot bring a cause of action under HB 4204, Claim I is dismissed with prejudice. *Doe*, 58 F.3d at 497 (claims are dismissed with prejudice if the court "determines that the pleading could not possibly be cured by the allegation of other facts"). Additionally, Plaintiff's request for an injunction (Claim IV) barring Defendants from proceeding with nonjudicial foreclosure actions is denied. Plaintiff's remaining claims are dismissed in part, to the extent that they depend on alleged violations of HB 4204.

## II. Claims based Defendants' imposition of a "workout" fee

Aside from the alleged HB 4204 violations, Plaintiff's second and third claims are additionally predicated on Defendant's alleged imposition of a "workout fee" that was not authorized under the Loan Agreement.[6] Pl.'s Compl. ¶¶ 34, 45. Apparently, in the April 19,

---

[6] Although Plaintiff did not attach the Loan Agreement as an exhibit in its pleadings, Plaintiff incorporates the Loan Agreement by reference in ¶ 5 of the Complaint and Defendants attach the document as an exhibit with their Motion for Judgment on the Pleadings. *See*, *Grant v. Aurora Loan Serv.'s, Inc.*, 736 F. Supp.2d 1257, 1264 n. 37 (C.D. Cal. 2010) (the incorporation by reference doctrine "permits a court deciding a Rule 12(b)(6) [or 12(c)] motion to consider documents incorporated by reference, but not physically attached to the complaint, if they are

9 – OPINION AND ORDER

2021, Notice of Default and Election to Sell, Defendants required Plaintiffs to pay a workout fee of $205, 362.01, among several other fees, to reinstate the loan and avoid foreclosure. *Id.*; Mckee Decl. Ex. 7, at 1–2.  Plaintiff avers that no such fee was listed in the Loan Agreement and that Defendants' demand violates the OTDA and the covenant of good faith and fair dealing. Pl.'s Compl. ¶¶ 34, 45.  Defendants argue that the plain language of the Loan Documents clearly authorizes the fee. Defs.' Mot. J. Pleadings 9–10.

> Section 11.24(a) of the May 3, 2017, Loan Agreement states:
>
> Borrower [Plaintiff] *shall pay . . . any fees and expenses* of Servicer (including, without limitation, reasonable actual attorneys' fees and disbursements) *in connection with* any release of the Property or a portion thereof, any prepayment, defeasance, transfer, assumption, amendment or modification of the Loan, any documents or other matters requested by Borrower or Guarantor, *any special servicing or **workout** of the Loan or enforcement of the Loan Documents*, including, without limitation, any advances made by Servicer and interest on such advances, any liquidation fees in connection with the exercise of any or all remedies permitted under this Agreement[.]

*Id.* at 14; Welek Decl. Ex. 1, at 92, ECF No. 19 (emphasis added). Based on the language in the Loan Agreement, it appears that Plaintiff is required to pay "any fees . . . in connection with . . . special servicing or workout of the Loan." *Id.* Following Plaintiff's missed 2020 payments to the Trust on the Loan, Plaintiff and Defendant Midland (loan servicer) entered into negotiations to discuss "potential workout options and CH's inability to make payments." Pl.'s Compl. ¶ 14. These negotiations lasted for several months, and while they ultimately proved unsuccessful, it appears that Midland was contractually entitled under the Loan Agreement to charge a workout fee based on these negotiations.

---

central to plaintiff's claim and no party questions their authenticity.") (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

Because the imposition of a workout fee was authorized by the language of the Loan Agreement, Plaintiff's ODTA and breach of the duty of good faith and fair dealing claims (II and III) are dismissed in so far as they rely on this allegation.

### III. Remaining allegations under Claims II and III

After stripping Plaintiff's Complaint of the assertions relating to HB 4204 and the workout fee, which both fail as a matter of law, the Complaint provides no independent allegations that show how Defendants have otherwise violated the OTDA[7] or breached the covenant of good faith and fair dealing. Plaintiff argues that even if Defendants are not in violation of HB 4204, there is still a cause of action because "the Trust is demanding payment and cure of amounts not due and not authorized by the Loan Documents." Pl.'s Compl. ¶ 38. But it appears that this allegation refers to the workout fee, which as discussed above, was authorized under the Loan Agreement. The Complaint does not specify which additional unauthorized fees Defendants imposed, other than the workout fee.

Moreover, Plaintiff does not cite to any particular provisions of the OTDA or otherwise explain how Defendants violated the Act. Courts have dismissed similar claims where a plaintiff alleges a blanket statutory violation but fails to specify how and which provision of the statute the defendants violated. *Graham v. U.S. Bank, Nat'l Ass'n*, No. 3:15-cv-0990-AC, 2015 WL 10322087, at *15 (D. Or. Dec. 2, 2015) (*Findings and Recommendation adopted*, 2016 WL 393336 (D. Or. Feb. 1, 2016)); *Pincetich v. Jeanfrau*, 699 F.Supp 1469, 1477 (D. Or. 1988)

---

[7] Plaintiffs OTDA claim is also moot because Defendants cancelled the nonjudicial foreclosure action in December of 2021. Defs.' Answer ¶ 78; Defs.' Mot. J. Pleadings 14. *Blanton v. Fed. Home Loan Mortg. Corp.*, No. 3:15-cv-00353-AC, 2016 WL 1158591 at *3 (D. Or. Feb. 29, 2016) (dismissing plaintiff's OTDA claim as moot because defendant cancelled nonjudicial foreclosure proceeding) (*Findings and Recommendation adopted*, 2016 WL 1192663 (D. Or. Mar. 21 2016)).

("The defendants are entitled to know the specific statutes, rules and regulations which form the basis for the [] claim.") Here, Plaintiff merely offers a legal conclusion that Defendants violated the ODTA, unsupported by specific facts (independent of HB 4204 violations) or statutory provisions. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555.

Finally, Plaintiff's third claim, that Defendants violated the covenant of good faith and fair dealing, fails for the same reasons. Apart from the allegations arising out of Defendants alleged HB 4204 violations and imposition of the workout fee, Plaintiffs fail to allege how Defendants breach the implied contractual covenant.

Therefore, Claims II and III are dismissed without prejudice, and the Court gives Plaintiff leave to file an Amended Complaint to show how Defendants violated the OTDA and covenant of good faith and fair dealing on grounds independent of HB 4204.

## CONCLUSION

Defendant's motion for judgment on the pleadings is GRANTED. Plaintiff's claims I and IV, arising under Section 1 of HB 4204 are dismissed with prejudice. Claims II and III are dismissed without prejudice.

IT IS SO ORDERED.

Dated this  18th  day of October, 2022.

                                                  /s/ Michael McShane  
                                                  Michael McShane  
                                           United States District Judge