IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CORVALLIS HOSPITALITY, LLC., *an Oregon limited liability company*,

        Plaintiff,

vs.

WILMINGTON TRUST, NATIONAL ASSOCIATION, *as Trustee for the Benefit of the Holders of LCCM 2017-LC26 Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2017-LC26*; MIDLAND LOAN SERVICES, INC., *a Delaware Corporation; and* BEACON DEFAULT MANAGEMENT, INC., *a California Corporation*,

        Defendants.

_____

Case No. 6:22-cv-00024-MC

OPINION AND ORDER

MCSHANE, J.:

      Defendants collectively move to dismiss and/or strike Plaintiff's Amended Complaint (ECF No. 32) on the grounds that it exceeds the scope of this Court's previous leave to amend, continues to assert claims predicated on the repealed statute HB 4204, and asserts claims that otherwise fail as a matter of law. Defs.' Mot. 2, ECF No. 34. For the following reasons, Defendants' Motion (ECF No. 34) is granted in part and denied in part.

**BACKGROUND**

Plaintiff is the owner and operator of the Hilton Garden Inn Corvallis, a hotel located on the campus of Oregon State University. Pl.'s First Amend. Compl. ¶ 1 ("FAC"). On May 3, 2017, Plaintiff entered into a Loan Agreement with a private lender, Ladder Capital Finance, LLC., evidenced by a promissory note, for the principal amount of $18,000,000.00. FAC ¶ 8. The loan and note were secured by a Deed of Trust with First American Title Insurance Company serving as trustee and Ladder Capital Finance, LLC as beneficiary. *Id.* at ¶ 9. After several assignments, Defendant Wilmington Trust is now the beneficiary under the Deed of Trust and asserts that it is also the owner of the Note as well as the secured party and assignee under the Loan Documents. *Id.* Defendant Beacon is the successor trustee for the Trust, for purposes of foreclosure, and Midland is the special servicer for the loan. *Id.* at ¶¶ 3, 4.

On June 30, 2020, Oregon Governor Kate Brown signed into law House Bill 4204, which created a COVID-19 "emergency period" from March 8, 2020, to September 30, 2020. *Id.* at ¶ 10; H.B. 4204, 80th Leg., 1st Spec. Sess. (Or. 2020). The purpose of HB 4204 was to temporarily protect borrowers experiencing pandemic-related financial hardships from going into default if they missed monthly payments on their loans. FAC ¶ 10. Section 1 of HB 4204 prohibited lenders from taking certain actions during the emergency period. These prohibitions included holding the borrower in default for missed payments, imposing fines or late fees, or initiating foreclosure actions against borrowers. HB 4204 § 1(3)(A). Instead, borrowers were permitted to defer payments due during the emergency period, "to the scheduled or anticipated date on which full performance of the obligation is due." HB 4204 § 1(3)(a)(B). Section 1 also provided a legal remedy for borrowers against lenders who violated any portion of Section 1 of HB 4204 during the emergency period. HB 4204 § 1(8)(a). Governor Brown extended the COVID-19 emergency period under HB 4204 to December 31, 2020, and the statute naturally

repealed 90 days later, on March 31, 2021. Exec. Order No. 20–37. On June 1, 2021, Governor Brown signed House Bill 2009, formally repealing Section 1 of HB 4204, effective June 1, 2021. H.B. 2009 § 2, 81st Leg., Reg. Sess. (Or. 2021).

Between May and October of 2020, while HB 4204 was in effect, Plaintiff faced pandemic related financial hardships, like much of the hospitality industry, and failed to make timely payments to the Trust. FAC ¶ 32. Plaintiff contacted Defendant Midland (special servicer) "to discuss potential options for resolution . . . in compliance with then-effective HB 4204." *Id*. Before entering into any negotiations or discussions, Midland required Plaintiff to sign a Pre-Negotiation Letter.[1] *Id*. Plaintiff avers that Midland did not provide Plaintiff with this letter until August of 2020, several months into the pandemic, even though Plaintiff had been trying to discuss repayment options with Midland for several months. *Id*. Plaintiff further contends that Midland and the Trust never made any earnest attempts to negotiate with Plaintiff or discuss repayment options. Pl.'s Resp. Defs.' Mot. 32–34, ECF No. 40.

On October 7, 2020, despite HB 4204's COVID-19 emergency period still in effect, Defendant Wilmington Trust notified Plaintiff that it was in default, imposed late fees and interest on the default payments, and accelerated the full amount due on the loan. FAC ¶ 34. Plaintiff's counsel requested that the Trust/Midland review the HB 4204 policy, but Defendants allegedly ignored this request. *Id*. at 35. Plaintiff began making payments to the Trust again in October of 2020, and Plaintiff was under the impression that all payments it made applied to monthly dues going forward and that any amount due for the missed 2020 payments would be applied later at loan maturity, consistent with the provisions of HB 4204. *Id*. at ¶¶ 36, 37.

---

[1] The Pre-Negotiation Letter offered by Defendants indicates that Plaintiff signed the letter on April 8, 2020. Gibbons Decl. Ex. 1 at 1, ECF No. 35.

On March 31, 2021, the Trust sent Plaintiff a letter stating that Plaintiff continued to owe default interest and late fees and demanded $1,118,422.22 as well as a "workout" fee of $205,362.01. *Id.* at ¶40. On April 15, 2021, the Trust sent Plaintiff a "reservation of rights letter" that indicated Plaintiff's payments were received between October 2020 and April 2021, but that these were considered partial payments because there was still an outstanding balance owed for the missed 2020 payments. *Id.* at 42. Plaintiff avers that it resumed full loan payments in April of 2021, however, the Trust has not been applying these payments as regularly scheduled payments. *Id.* at ¶¶ 41–42. Then on April 19, 2021, Defendant Beacon, acting on behalf of the Trust, initiated nonjudicial foreclosure proceedings against Plaintiff by filing a Notice of Default and Election to Sell. *Id.* at ¶¶ 43. Despite these actions, Plaintiff asserts that it continues to make full and timely payments to the Trust, that payments are up to date, and that Defendants will not provide Plaintiff with a loan transaction history to show how the Trust has applied Plaintiff's monthly payments. *Id* at ¶ 44.

On December 14, 2021, Plaintiff filed this action[2] against Defendants in Benton County Circuit Court, alleging the following claims: (I) violation of HB 4204, (II) violation of the Oregon Trust Deed Act ("OTDA"), (III) breach of the covenant of good faith and fair dealing; and (IV) seeking an injunction to prevent Defendants from foreclosing on the Deed of Trust. Pl.'s Compl, ECF No. 1. Defendants timely removed this case to the District of Oregon and this Court denied Plaintiff's Motion to Remand to state court. *See* ECF Nos. 1, 7, 16. On June 22, 2022, Defendants moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Defs.'

---

[2] On July 8, 2022, Wilmington Trust et al., filed their own civil action against William Lawson, representative of Corvallis Hospitality LLC, in the U.S. District Court for the District of Oregon, asserting a single claim for Breach of Guaranty, seeking damages in the amount of $20,358,000. 6:22-cv-00993-MK (*now consolidated with this case*).

Mot. J. Pleadings, ECF No. 18. This Court dismissed claims I and IV with prejudice, ruling that any claims brought under HB 4204 failed as a matter of law, because Plaintiff filed this suit after HB 4204 was repealed and the statute did not contain a savings clause. *See Opinion and Order*, ECF No. 31. This Court also dismissed the remaining counts (II and III) without prejudice, and gave Plaintiff leave to amend those claims based on grounds independent of HB 4204. *Id.*

On November 17, 2022, Plaintiff filed an Amended Complaint (ECF No. 32) and on December 9, 2022, Defendants filed the present Motion to Dismiss and/or Strike Plaintiff's Amended Complaint (ECF No. 34.). The Court heard oral arguments on the Motion on April 19, 2021.

## STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). When considering a motion to dismiss, the court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant. *Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. If the complaint is dismissed, leave to amend should be granted unless "the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## DISCUSSION

Defendants argue that Plaintiff's Amended Complaint should be dismissed in its entirety because the asserted claims exceed the scope of this Court's leave to amend, and each of Plaintiff's claims fail as a matter of law. Each argument will be discussed in turn.

## I.    Scope of Leave to Amend

In a previous Opinion and Order, this Court gave Plaintiff "leave to file an Amended Complaint to show how Defendants violated the OTDA and covenant of good faith and fair dealing on grounds independent of HB 4204." *Opinion and Order* 12, ECF No. 31. In its Amended Complaint, Plaintiff reasserts the OTDA and breach of good faith claims, and additionally alleges (i) breach of contract, (ii) tortious interference with economic relations, (iii) accounting, and (iv) declaratory judgment. *See generally* FAC.

Defendants construe the Order narrowly, arguing that Plaintiff does not have permission to "fully reinvent the case" and that the new claims should be dismissed or stricken pursuant to Rule 12(f).[3] Defs.' Mot. 6–7. In Response, Plaintiff argues that the additional claims are within the scope of the Court's order and this Court did not use any *express* language stating that Plaintiff could *only* bring the OTDA and breach of good faith claims in the Amended complaint. *Id*. at 7; See *Claus v. Columbia State Bank*, 3:16-cv-01509-AC, 2019 WL 5624754 at *14 (D. Or. Oct. 30, 2019) (Finding new claims did not exceed scope of Court's order because "the court did not include express language limiting leave to amend to only the then-asserted claims.").

This Court has discretion to grant leave to amend with extreme liberality, "when justice so requires." Fed. R. Civ. P. 15(a)(2). While this Court's previous Order suggested that Plaintiff reassert only its OTDA and breach of good faith claims, the Court recognizes that it significantly

---

[3] Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

narrowed Plaintiff's legal avenue for relief by removing the HB 4204 claim. The Court has no

issue with Plaintiff asserting a new legal theory based on the same set of operative facts and does

not find that Defendants will be unduly prejudiced.

Defendants also contend that the Amended Complaint exceeds the scope of the Court's

Order because several claims are still predicated on violations of HB 4204. Defs.' Mot. 8.

Although this Court previously held that Plaintiff cannot bring a cause of action under the

repealed statute and must assert claims independent of HB 4204, Defendants should not construe

this to mean that Plaintiff cannot mention HB 4204 anywhere in its Amended Complaint. The

core of the alleged facts in this case necessarily involve (i) HB 4204 having legal effect at the

time Plaintiff missed payments; (ii) Plaintiff's reasonable expectations under the statute that

Defendants would not treat the missed payments as a default during the emergency period; and

(iii) Defendants' apparent disregard of HB 4204's mandate. Whether Plaintiff was in fact legally

entitled to HB 4204's protections during the relevant time period is a question to be decided at a

future date. However, at the motion to dismiss phase, Plaintiff may allege facts relevant to HB

4204 to support its breach of contract and breach of good faith claims.

## II.    Breach of Contract

Defendants also contend that Plaintiff fails to allege sufficient facts to sustain a breach of

contract claim under both Oregon and New York[4] law. Defs.' Mot. 12. "To state a claim for

---

[4] Plaintiff argues that the Loan Agreement is governed by New York, rather than Oregon law. Pl.'s Resp. 17. Indeed, Section 11.3 of the Loan Agreement indicates that New York law governs "the construction, validity and enforceability of all loan documents and all of the obligations arising hereunder." Welek Decl. Ex. A at 75, ECF No. 19. Under New York law, the elements for a breach of contract claim are essentially the same as they are in Oregon; "[1] the existence of a contract, [2] the plaintiff's performance pursuant to the contract, the defendant's breach of its contractual obligations, and damages resulting from the breach." *Weatherguard Contractors Corp. v. Bernard*, 155 A.D.3d 921, 922 (N.Y. App. Div. 2017).

breach of contract under Oregon law, a plaintiff must allege the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach, and defendant's breach resulting in damage to plaintiff." *Saxco Int'l, LLC v. Wright*, No. 3:17-CV-0849-PK, 2017 WL 6888567, at *2 (D. Or. Oct. 18, 2017) (quoting *Arnett v. Bank of Am., N.A.*, 874 F. Supp. 2d 1021, 1029 (D. Or. 2012)). While there is no doubt of the existence of a contract between the parties, Defendants argue that Plaintiff (i) fails to identify relevant provisions of the contract that Defendants allegedly breached, (ii) cannot show that it fully performed its obligations under the Loan Agreement, and (iii) fails to request specific damages. Defs.' Mot. 13–14.

Under either Oregon or New York law, the Court finds that Plaintiff has plausibly alleged a claim for breach of contract. First, Plaintiff avers throughout the Complaint that it has fully performed its end of the bargain under the Loan Agreement. FAC ¶ 68, 76, 82 ("CH complied with its contractual payment obligations[.]"). Specifically, Plaintiff alleges that the loan is in good standing and that its payments to the trust have not been properly applied. FAC ¶ 44.

> [W]hen Midland provided CH with a loan transaction history, CH learned that directly after Defendants issued the Notice of Default and Election to Sell, the Trust/Midland applied sums paid by CH to the May 2020 through January 2021 principal and interest payments to **bring those payments current**. Additionally, Midland provided CH with a loan transaction history at the start of August 2021, which confirms that the Trust/Midland applied sums **sufficient to bring principal and interest payments current through July 2021.**

FAC ¶ 44 (emphasis added). Second, Plaintiff specifically alleges that Defendants have breached the Loan Agreement by (i) unlawfully accelerating the loan when HB 4204 was in effect, (ii) charging default interest, late fees, and special servicer fees that were not due (iii) failing to properly apply payments, (iv) charging "workout fees that, as defined in the PSA, constitute unenforceable liquidated damages and unlawful penalties to CH," (v) exercising wrongful foreclosure remedies, (vi) and refusing to provide an accounting of how the Trust has applied

Plaintiff's payments. FAC ¶¶ 78–87 (emphasis added). Plaintiff also cites to specific provisions of the loan documents which detail the circumstances under which Defendants may apply default rates (Section 2.2.2.) and late payments fees (2.3.3). FAC ¶¶ 56, 57. The thrust of Plaintiff's argument is that because it was never in default as a matter of law, Defendants breached these provisions by demanding unauthorized default and late fees.

Moreover, Section 11.12 of the Loan Agreement authorizes Plaintiff to "commenc[e] an action seeking specific performance, injunctive relief or declaratory judgment" if Defendants act "unreasonably." Welek Decl. Ex. A at 79. Although Plaintiff did not specifically cite to this provision, the Amended Complaint sufficiently alleges facts to show that Defendants acted unreasonably. Plaintiff may assert a breach of contract claim under this provision.

Third, the Court finds that Plaintiff has sufficiently pleaded damages. In paragraph 48 of the Amended Complaint, Plaintiff details the various default, servicing, and late payment fees that Defendants allege are owed.[5] FAC ¶ 48. At oral argument, Plaintiff's counsel estimated that Plaintiff has overpaid at least $750,000 in fees and interest that it does not owe to the Trust. Moreover, because Defendants allegedly refuse to provide Plaintiff with an accounting of how the monthly loan payments have been applied, Plaintiff avers that it is impossible to ascertain exact damages until it receives a full loan accounting. Pl.'s Resp. 23. The Court is satisfied that Plaintiff has plausibly sustained damages which will be further articulated throughout discovery.

### III.    Breach of the Covenant of Good Faith and Fair Dealing

---

[5] As of December 21, 2021, Defendants allege that Plaintiff owes: "(a) the principal sum of $16,763.168.51; (b) accrued interest in the amount of $389,836.80; (c) default interest in the amount of $1,261,702.73; (d) late charges of $146,475.80; (e) taxes and insurance advances of $254,983.04; (f) property protection advances of $114,588.15; (g) special servicing fees of $60,777.96; (h) an estimated Yield Maintenance Premium of $2,816,993.86; and (i) miscellaneous charges, ongoing interest, insurance premiums, foreclosure costs, receiver fees, inspector fees, attorney fees, and costs of suit not yet determined." FAC ¶ 48.

The Court also finds that Plaintiff has plausibly alleged that Defendants' actions violated the covenant of good faith and fair dealing. "Under Oregon law, every contract contains an implied duty of good faith and fair dealing." *Gregory Funding LLC v. Saksoft, Inc*., No. 3:16–cv–480–SI, 2016 WL 4480693 at *3 (D. Or. Aug. 24, 2016). "A party may violate the covenant of good faith and fair dealing without breaching the express terms of the contract. The covenant, however, cannot contradict an express contractual term, nor otherwise provide a remedy for an unpleasantly motivated act that is expressly permitted by the contract." *Foraker v. USAA Casualty Ins. Co.*, 345 F. Supp. 3d 1308, 1310 (D. Or. 2018) (quoting *Zygar v. Johnson*, 10 P.3d 326, 330 (Or. App. 2000)). To state a breach of implied duty of good faith claim, a plaintiff must point to relevant contract terms, state "the parties' reasonable expectations under the contract," and state how the "[d]efendant's conduct was inconsistent with the parties' reasonable expectations." *Cutler v. U.S. Bank Nat'l Ass'n*, No. 3:18-cv-01045-YY, 2019 WL 157919, at *3 (D. Or. Jan. 9, 2019).

The Court finds it plausible that HB 4204 had the effect of modifying the parties' reasonable expectations of their contractual relationship under the Loan Documents. HB 4204 mandated that during the emergency period lenders were prohibited from treating missed payments as a default, imposing fines, or initiating foreclosure actions against borrowers. HB 4204 § 1(3)(A). In fact, Plaintiff alleges that during the emergency period, Wells Fargo, acting on behalf of Defendants, "provided CH with a copy of HB 4204 informing CH that it should contact its legal counsel with any questions regarding HB 4204." FAC ¶ 33. These facts indicate that Plaintiff reasonably believed that Defendants would honor Governor Brown's mandate and defer Plaintiff's missed payments to the end of the payment plan, pursuant to HB 4204 § 1(3)(a)(B). Defendants' alleged decision to simply ignore HB 4204 and accelerate the loan

payments was certainly inconsistent with the expectations of all borrowers during the emergency period and likely amounts to a breach of good faith and fair dealing.

## IV.    OTDA Claim

Next Defendants argue that Plaintiff's Oregon Trust Deed Act claim is *still* moot because Defendants have cancelled the nonjudicial foreclosure sale scheduled for December of 2021.[6] Defs.' Mot. 6. Indeed, this Court previously ruled that the OTDA claim was moot on those grounds. *Opinion and Order* 11, n.7, ECF No. 31, *citing Blanton v. Fed. Home Loan Mortg. Corp.*, No. 3:15-cv-00353-AC, 2016 WL 1158591, at *3 (D. Or. Feb. 29, 2016) (dismissing plaintiff's OTDA claim as moot because defendant cancelled nonjudicial foreclosure proceeding) (*Findings and Recommendation adopted*, 2016 WL 1192663 (D. Or. Mar. 21 2016)). Plaintiff, however, avers that there is still a "live controversy." Pl.'s Resp. 12; *See* FAC ¶ 76 ("The fact that the Defendants have seemingly abandoned their nonjudicial foreclosure is of no consequence because CH suffered damage and continues to suffer damage based upon Defendants' violations."). Plaintiff also contends it may still bring the OTDA claim because Defendants have now brought a judicial foreclosure counterclaim. Pl.'s Resp. 14.

The OTDA was "enacted in 1959 to provide an *alternative* to the judicial foreclosure process." *Bandrup v. ReconTrust Co., N.A.*, 303 P.3d 301, 305 (Or. 2013) (emphasis added). In the event of a borrower's default, "[t]he OTDA permits the trustee appointed under a trust deed to advertise and sell the property to the highest bidder *without judicial involvement*," as long as certain conditions are met. *Id.* (emphasis added). The OTDA also "prescribes notice

---

[6] On December 20, 2021, the circuit court ordered a temporary restraining order to prevent Defendants from proceeding with the nonjudicial foreclosure. Pl.'s Compl, Ex. A, at 111. Defendants have since cancelled the nonjudicial foreclosure sale. Defs.' Answer ¶ 78, ECF No. 5. On January 24, 2022, Defendants answered the initial Complaint and filed several counterclaims including a judicial foreclosure action against Plaintiff. *Id.*

requirements that protect trust deed grantors from unauthorized nonjudicial foreclosures and sales of property." *Id*. at 306. In sum, the OTDA was enacted to (1) "provide lenders an efficient remedy against a defaulting grantor" by circumventing the traditional judicial foreclosure process, while also (2) providing stringent protections and legal remedies for borrowers in the event of a wrongful nonjudicial foreclosure. *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1164 (9th Cir. 2016). It does not follow however, that plaintiffs may bring an action under the OTDA to contest a formal *judicial* foreclosure. The very nature of a judicial foreclosure provides the judicial oversight inherently imbedded in the strict statutory scheme of the OTDA.

At oral argument, Plaintiff construed Judge Aiken's opinion in *Vettrus v. Bank of America, N.A.,* as suggesting that an OTDA claim is appropriate even after the recission of a nonjudicial foreclosure, if the lender also brings a judicial foreclosure action. No. 6:12–cv–00074–AA, 2012 WL 5462914 (D. Or. Nov. 6, 2012). Not so. In *Vettrus*, Judge Aiken dismissed the plaintiff's OTDA claim, citing the "well established" notion that, "when a non-judicial foreclosure sale is rescinded, any claims premised on the nonjudicial foreclosure are rendered moot." *Id.* at *4 (internal quotations omitted). Judge Aiken further noted that,

> while [the defendants] have not yet initiated a judicial foreclosure action on the Property, they clearly intend to do so . . . Plaintiff may then allege defendants' wrongful actions in *defending* against their claim for foreclosure of a security interest. Accordingly, plaintiff will not be deprived of the Property without proper judicial oversight.

*Id.* (emphasis added). Nowhere in this opinion does the court suggest that an OTDA claim should survive for purposes of defending against a judicial foreclosure action; the decision to dismiss the OTDA claim suggests just the opposite.

Plaintiff has not provided any case law endorsing the use of an OTDA claim to contest a judicial foreclosure proceeding. While Plaintiff is perfectly entitled to defend against

Defendants' judicial foreclosure counterclaim, its OTDA claim fails as a matter of law, because Defendants rescinded the nonjudicial foreclosure and no sale ever occurred. "Oregon does not recognize a claim for a wrongfully *attempted* foreclosure." *Tabb v. One West Bank, FSB*, No. 3:10–cv–855–ST, 2011 WL 4448752, at *8 (D. Or. Aug. 26, 2011); *Vettrus*, 2012 WL 5462914 at *4. This claim is dismissed with prejudice.

## V.    Tortious Interference with Economic Relations

Defendant next argues that Plaintiff failed to properly allege a claim for tortious interference of economic relations. Defs.' Mot. 16. To state a claim for tortious interference, a plaintiff must plausibly allege six elements:

> (1) the existence of a professional or business relationship (which could include, e.g., a contract or a prospective economic advantage), (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages.

*Mannex Corp. v. Bruns*, 279 P.3d 278, 281 (Or. App. 2012). Plaintiff alleges that Defendants intentionally interfered with its business relations with OSU and the Hilton Franchisor. FAC ¶ 100. OSU leases the property to Plaintiff where the Hilton Garden Inn is located, and Plaintiff has a franchise agreement with the Hilton Franchisor. FAC ¶¶ 98–99. Plaintiff typically pays the Trust for the ground lease each month, and the Trust makes payments directly to OSU; however, Plaintiff has recently paid OSU directly while also including the lease amount in its monthly payments to the Trust. *Id.*

In the Amended Complaint, Plaintiff asserts a long list of adverse actions that the Trust and Midland have taken against Plaintiff, all of which have nothing to do with Plaintiff's relations with OSU and the Hilton Franchisor. Plaintiff asserts a single relevant allegation, that the Trust and Midland "erroneously inform[ed] OSU and the Hilton Franchisor that CH owes

[default interest and fees] despite the fact that Midland acknowledged in writing that all payments had been made from January 2021 and CH continues to make regular payments to the Trust." FAC ¶ 100. Even if Midland erroneously informed OSU and Hilton that Plaintiff has defaulted on loan payments, Plaintiff fails to allege any resulting harm or adverse consequences between Plaintiff's relationship with OSU and Hilton. For instance, there are no allegations that OSU has cancelled the lease, or penalized Plaintiff in anyway. Plaintiff has not sufficiently alleged facts showing that the Trust and Midland made efforts to intentionally interfere with the economic relations between Plaintiff and OSU and Hilton, or that any harm has occurred to those relations. This claim is dismissed.

## VI.    Accounting and Declaratory Judgment

Defendants also takes issue with Plaintiff's accounting and declaratory judgment "claims" on the basis that these are equitable remedies. Defs.' Mot. 18. The Court agrees that an accounting is an equitable remedy,[7] and one that is clearly warranted in this case. Plaintiff contends that despite repeated requests, the Trust and Midland refuse to provide Plaintiff with any monthly statements or loan history documents that would show (i) how the Trust has applied Plaintiff's payments and calculated the default interest and late fees, or (ii) whether the reserves, insurance and ground lease payments have been properly made. FAC ¶ 104. The Court finds that Plaintiff is entitled to this information to proceed with its claims.

Plaintiff also seeks a declaratory judgment from the Court that Defendants waived their right to (i) accelerate the loan, (ii) demand late fees and default interest, (iii) and assert that

---

[7] "An accounting is an equitable remedy, not a separate cause of action." *Motameni v. Adams*, No. 3:21-cv-01184-HZ, 2022 WL 3682940, at *8 (D. Or. Aug. 25, 2022); *Flaherty v. Bookhultz,* 291 P.2d 221, 224 (Or. 1956) ("An accounting may be had as incidental to other equitable relief.").

Plaintiff is in default. FAC ¶ 111. Defendant avers that this remedy should be dismissed from the Amended Complaint because Plaintiff cannot prevail on its underlying claims. Defs.' Mot. 18. The Court disagrees. As noted previously, Section 11.12 of the Loan Agreement entitles Plaintiff to seek declaratory relief. *See* Welek Decl. Ex. A at 79 ("Any action or proceeding to determine whether Lender has acted reasonably shall be determined by an action seeking declaratory judgment."). It remains to be seen whether Plaintiff will prevail on its claims and the Court will exercise its discretion to grant declaratory relief after discovery is completed. Any decision beforehand would be premature.

**VII.    Allegations Regarding Settlement Negotiations**

Finally, Defendants move the Court to strike any allegations from the Amended Complaint that discuss the parties "settlement negotiations" that took place during the emergency period. Defs.' Mot. 29. On April 8, 2020, Plaintiff allegedly signed a "Pre-Negotiation Letter" before entering into discussions with Midland about the missed 2020 payments. The letter states that,

> neither party, shall be permitted to assert claims, causes of action, suits and defenses which each may have against the other or Midland based on the conduct or process of the Discussions themselves. The Discussions may not be admitted into evidence or otherwise used in any adversarial proceeding.

Gibbons Decl. Ex. 1 at 1, ECF No. 35 (emphasis added). Defendants contend that despite signing this document, Plaintiff's Amended Complaint includes several allegations related to the settlement discussions between Plaintiff and Midland. Defs.' Mot. 19–20. Whether Plaintiff is precluded from relying on these communications is an admissibility matter that will be determined at a later date.

**CONCLUSION**

Defendants' Motion to Dismiss (ECF No. 34) is GRANTED in part and DENIED in part. Plaintiff's OTDA and tortious interference with economic relations claims are dismissed. All other claims remain. The Court will not require Plaintiff to file a Second Amended Complaint.

IT IS SO ORDERED.

Dated this 28th day of April, 2023.

_____/s/ Michael McShane_____
Michael McShane
United States District Judge